

*U.S. Department of Justice*

*United States Attorney
Southern District of New York*

*The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007*

February 20, 2023

<u>By ECF</u>

Hon. P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

Re: *United States v. Kenneth Wynder, Jr., and Andrew Brown*, 20 Cr. 470 (PKC)

Dear Judge Castel:

The Government respectfully submits this letter to briefly respond to defendant Brown's supplemental letter, dated February 9, 2023, in opposition to the Government's Motions *in Limine*, (Dkt. 178). As explained in the Government's Motions (Dkt. 105 at 13-14), as part of the wire fraud scheme, in May 2019, Brown worked with co-defendant Kenneth Wynder to orchestrate a $40,000 fraudulent withdrawal from the Annuity Fund, which they used, in part, to make a premium payment to a life insurance provider (the "Provider"). In short, the Government is seeking to introduce evidence that Brown, in his capacity as an insurance broker, earned significant commissions from the Provider when various organizations, including LEEBA, paid premiums to the Provider (*see* Dkt. 105 at 13-15), which provides important context and motive for Brown's decision to steal money from the Annuity Fund to pay outstanding bills to the Provider. Thus, when LEEBA fell behind on making its premium payments to the Provider, Brown was eager for LEEBA to make payments to the Provider because (1) Brown would receive a commission payment from the Provider as a percentage of LEEBA's premium payment, and (2) Brown was concerned that LEEBA's continued non-payment would threaten other, more lucrative business relationships with the Provider, including work he did on behalf of another union.

In his supplemental letter, Brown argues that a statement from a witness from the Provider supports his argument that the Government's motion should be denied. Specifically, he refers to the witness saying that "non-payment on the LEEBA policies did not change [the Provider's] stance on the [other union's] [insurance] policy." Dkt. 178 at 2. Brown's reliance on this statement to support his argument misses the mark. The Government expects the evidence at trial to demonstrate that Brown *himself* was concerned about his overall ongoing business relationship with the Provider based on LEEBA's non-payment, which supports his motive to commit the crime. In its Reply Memorandum in Support of the Government's Motions *in Limine* (Dkt. 122), the Government cited several communications highlighting Brown's express concerns, including an email from Brown to Wynder and a LEEBA employee stating "I can no longer do business with [Provider-2] and probably [Provider-3]. I do a LOT of business with [the Provider] and I gave my word that this would be paid in three months. . . . I really thought the distribution made from the Annuity Fund were going to pay this." (Dkt. 122 at 3). Whether Brown would have, in fact, lost business from the Provider based on LEEBA's non-payment is irrelevant because part of Brown's

The Honorable P. Kevin Castel
Page 2

motive to commit the charged fraud was his own stated fear of losing other business opportunities with the Provider. (*See id.* at 1-6). And the nature of extent of Brown's relationship with the Provider is important evidence to tell the complete story of the crime and provide background and context to Brown's decision to participate in fraudulently withdrawing funds from the Annuity Fund to divert them to the payment of outstanding past-due premiums to the Provider.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By:   /s/
Eli J. Mark
Kedar S. Bhatia
Andrew Rohrbach
Assistant United States Attorneys
(212) 637-2431/2465/2345

cc:   (*via ECF*)

George R. Goltzer, Esq.
Ying Stafford, Esq.
Max Nicholas, Esq.
Reed Keefe, Esq.