UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
UNITED STATES OF AMERICA,

                                          20-cr-470 (PKC)

        -against-                          ORDER

KENNETH WYNDER,

                           Defendant.
------------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Kenneth Wynder, proceeding pro se, moves for a sentence reduction to a non-incarceratory sentence for extraordinary and compelling reasons. 18 U.S.C. § 3582(c)(1)(A)(i). For reasons to be explained, the motion will be denied.

        Wynder was convicted of wire fraud, conspiracy to commit wire fraud, tax evasion, and conspiracy to defraud the United States, as charged in Superseding Indictment S1 20 Cr. 470 (PKC). (ECF 44; ECF 196.) He was sentenced to a term of imprisonment of 40 months to be followed by three years of supervised release and ordered to pay $838,683.62 in restitution and $529,000 in forfeiture. (ECF 255.)

        Wynder's offense conduct is described in the Final Presentence Investigation Report ("PSR"). (ECF 222.) Wynder was the founder and President of the Law Enforcement Employees Benevolent Association ("LEEBA"), a labor union acting on behalf of law enforcement personnel of various agencies of the City of New York. (Id. ¶¶ 12-13.) He was also a member of the boards of trustees of LEEBA's Annuity Fund and Welfare Fund, which

provided supplemental insurance benefits to LEEBA's members, and the Fund Administrator of the Annuity Fund. (Id. ¶ 13.) From about 2012 to 2019, Wynder caused LEEBA to withdraw and transfer approximately $529,000 from the Annuity Fund to its main operating account, where Wynder used the money to pay for various personal expenses, including a Lexus automobile and rent on an apartment. (Id. ¶¶ 18, 22.) In connection with this scheme, Wynder submitted instruction forms to the Annuity Fund's custodian falsely stating that the withdrawals were to defray administrative expenses, misrepresented to union members and prospective union members that he was properly administering the Annuity Fund, and failed to comply with an audit of the Annuity Fund by the New York City Comptroller. (Id. ¶¶ 18, 24, 26.) As a result of these withdrawals, numerous LEEBA members were left with virtually no money in their individual retirement accounts at the Annuity Fund. (Id. ¶ 21.) Wynder also obtained payments in cash and checks from LEEBA that he evaded paying taxes on. (Id. ¶¶ 36-38.) Although the union's board had approved a salary of $72,000 per year for Wynder, by 2018 he received more than $220,000 in annual compensation. (Id. ¶ 13 n.2.)

Wynder's sentencing took place on January 17, 2024. (ECF 263 at 1.) At sentencing, the defense did not object to the facts as set out in the PSR. (Id. at 5-6.) The PSR placed Wynder in Criminal History Category I, calculated his total offense level as 27, and calculated an advisory Guidelines range of 70 to 87 months. (ECF 222 at 16, 25.) Without objection from the defense, the Court adopted that Guidelines range. (ECF 263 at 15.) The defense sought a sentence of home incarceration, while the government sought a sentence of incarceration consistent with the Probation Department's recommendation of 54 months' imprisonment. (Id. at 28; ECF 248 at 14, 30.) The Court announced its proposed statement of reasons and proposed a below-Guidelines sentence of principally 40 months' imprisonment.

(ECF 263 at 48-54.)  Neither Wynder nor the government objected to the proposed sentence, and the Court imposed sentence.  (Id. at 54-59.)  Wynder began serving his sentence at the Federal Medical Center in Fort Worth, Texas on June 17, 2024.  (ECF 284 at 7; see ECF 278.)

Wynder has included with his motion a letter he wrote to the Warden of the Federal Medical Center Forth Worth on July 2, 2024 seeking a non-incarceratory sentence for extraordinary and compelling reasons.  (ECF 282 at 6-8.)  According to the government, Wynder's request was subsequently denied.  (ECF 284 at 7.)  It thus appears that Wynder has satisfied the exhaustion requirement in 18 U.S.C. § 3582(c)(1)(A).

I. The Court Does Not Find Extraordinary and Compelling Reasons

"Before it can reduce a term of imprisonment or release a defendant under § 3582(c)(1)(A), a district court must 'find[ ] that . . . extraordinary and compelling reasons warrant such a reduction.'"  United States v. Jones, 17 F.4th 371, 374 (2d Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  District courts have "broad discretion" when considering such motions and are free to "consider the full slate of extraordinary and compelling reasons that may warrant an imprisoned person's release."  United States v. Amato, 48 F.4th 61, 66 (2d Cir. 2022) (citation and internal quotation marks omitted).  "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason'" for sentence reduction.  United States v. Brooker, 976 F.3d 228, 237-38 (2d Cir. 2020) (quoting 28 U.S.C. § 994(t)).

A Policy Statement issued by the United States Sentencing Commission effective November 1, 2023 presents helpful guidance to a Court considering a motion to reduce a sentence for extraordinary and compelling reasons.  U.S.S.G. § 1B1.13 (amended eff. Nov 1, 2023).  The Policy Statement addresses in some detail considerations relating to the "Medical

- 3 -

Circumstances of the Defendant," "Age of the Defendant," "Family Circumstances of the Defendant," "Victim of Abuse," "Unusually Long Sentence" and "Other Reasons." As pertinent to this motion, "Family Circumstances" that are potentially extraordinary and compelling include "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." Id. § 1B1.13(b)(3)(B).

Wynder asserts that extraordinary and compelling reasons exist in his case because his wife is terminally ill, and he is her only available primary caregiver. (ECF 282 at 1.) Wynder states that his wife is suffering from Stage III Leukemia and that she also has a non-operable brain tumor. (Id. at 2.) According to Wynder, her physical and mental condition has deteriorated since his sentencing. (Id.) Her tumor has grown, and her blood levels have decreased to a point that suggests she is entering Stage IV Leukemia. (Id.) This deterioration has caused worsening vision, loss of equilibrium, forgetfulness, weight loss, loss of strength, weakness, and exhaustion. (Id.) Wynder notes that it has become very difficult for his wife to perform simple tasks like climbing the stairs, cooking, cleaning, and taking baths. (Id.) Wynder adds that he was his wife's only available primary caregiver for 30 years before his incarceration. (Id. at 4.)

Wynder has included with his motion a letter from his wife stating that "Kenneth Wynder has been my caretaker for as long as [I've] been sick and [I] would like [] and need him to continue when he comes home." (Id. at 10.) Wynder has also attached a letter from his wife's doctor dated July 13, 2023 noting that "[s]he is currently being treated for the following medical conditions: chronic lymphocytic leukemia, migraine without aura, gastroesophageal reflux disease, and cerebrovascular accident." (Id. at 9.) In addition, Wynder has submitted records from his wife's doctor's visits between December 15, 2023 and August 23, 2024 that mainly list

her medical conditions, including chronic lymphocytic leukemia, medications, and laboratory tests.[1]

        The Court acknowledges the unfortunate situation that Wynder and his wife are facing due to her healthcare needs. Neither the Court nor the government dispute that she is suffering from serious medical conditions. Indeed, the Court was apprised of her diagnosis and worsening condition, as well as Wynder's status as her sole caretaker, in advance of Wynder's sentencing. (See ECF 245 at 4-5; ECF 245-1 at 2.) At sentencing, the Court considered as mitigating circumstances that Wynder's wife "has long been suffering from leukemia," that "her condition is deteriorating," and that Wynder was "a good husband." (ECF 263 at 51-52.) The PSR, revised in August 2023, noted that Wynder's wife was first diagnosed with lymphocytic leukemia 28 years ago, i.e., in 1993, and that in August 2023 she was in Stage III of the disease. (ECF 222 ¶ 86.) Wynder and his wife married in 2000. (Id.)

        Wynder has not met his burden of demonstrating extraordinary and compelling reasons warranting compassionate release. Wynder has not established that his wife's medical conditions have resulted in her incapacitation. The materials that he has submitted together with his motion certainly document his wife's medical conditions, but they do not shed any light on what tasks she is presently capable or incapable of performing. See United States v. O'Bryant, 16-cr-317-3 (PAE), 2023 WL 8447995, at *5 (S.D.N.Y. Dec. 6, 2023) (denying motion for compassionate release where materials submitted by the defendant "while establishing [his wife's] pain and reduced mobility, do not establish that she is incapable of caring for herself"). Nor has Wynder established that he is the only available caregiver for his wife. "[C]ourts generally require a showing of evidence from several sources indicating that the defendant is the

---

[1] The Court has reviewed the medical records submitted by Wynder in considering this motion, but they have not been docketed for privacy reasons.

only available caregiver for a family member in dire conditions[] before concluding that an extraordinary and compelling reason has been established." United States v. Lindsey, 13-cr-271 (LTS), 2021 WL 37688, at *3 (S.D.N.Y. Jan. 4, 2021) (internal quotation marks and citation omitted). The letter from Wynder's wife expressing her desire that he continue as her caretaker upon his return home does not show that there is no other caretaker capable of providing the care that she now needs. In his letter to the Warden of the Federal Medical Center Forth Worth, Wynder states that no family members, including his two daughters, are able to serve as caregivers. (ECF 282 at 6.) In that same letter, however, he notes that his wife "has an application before the State of Pennsylvania to appoint a caregiver, which was approved at the first level . . . ." (Id. at 7.) While Wynder adds that final approval "will be a lengthy process" and that the caregiver will only be "part-time . . . for four hours a day," he has failed to demonstrate that this appointed caregiver, or any other non-family member, would be unable to provide the necessary care. (Id.)

Considering the entirety of Wynder's motion and the accompanying materials that he has submitted, the Court concludes that he has not established an extraordinary and compelling reason for a sentence reduction to a non-incarceratory sentence.

II. The Section 3553(a) Factors Weigh Against a Sentence Reduction

"[E]xtraordinary and compelling reasons are necessary—but not sufficient—for a defendant to obtain relief under § 3582(c)(1)(A)." Jones, 17 F.4th at 374. Even where such circumstances exist, "the court must also consider 'the factors set forth in section 3553(a) to the extent that they are applicable' before it can reduce the defendant's sentence." Id. (quoting 18 U.S.C. § 3582(c)(1)(A)).

While no extraordinary and compelling reason is present here, the Court has also considered the section 3553(a) factors and concludes that they do not counsel in favor of the requested sentence reduction. Wynder asserts that a non-incarceratory sentence is warranted given, among other things, he poses no danger to the safety of others or the community, he has no other criminal history, his age puts him at a low risk of recidivism, and it would allow him to be employed and repay his restitution faster. (ECF 282 at 2-4.) The Court noted at sentencing that there was no need for specific deterrence as to Wynder or a risk that he would reoffend. (ECF 263 at 52.) But, as the Court stated, there was still a need for general deterrence and for just punishment to vindicate the rights of the people who were "hurt badly" by Wynder's criminal conduct. (Id. at 52-53.) From the date he began serving his sentence at the Federal Medical Center Fort Worth to present, Wynder has only served about nine and a half months out of his sentence of 40 months. Such a term of imprisonment is not sufficient to promote respect for the law for similar crimes or serve the interests of general deterrence or just punishment.

In this case, the section 3553(a) factors counsel against a sentence reduction of Wynder's original sentence that was below the advisory Guidelines range.

The motion is DENIED. The Clerk is requested to terminate the motion at ECF 282.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
        April 3, 2025

COPY MAILED TO: Kenneth Wynder, Reg. No. 88067-054, FMC Fort Worth, Federal Medical Center, P.O. Box 15330, Fort Worth, TX 76119